[No. 20382-1-II. Division Two. November 7, 1997.]

SACRED HEART MEDICAL CENTER, ET AL., *Appellants*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Raymond G. Dodge* of *Workland, Witherspoon & Brajcich*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Anne E. Egeler, Assistant*, for respondent.

SEINFELD, J. — This case involves RCW 82.08.0293(3)(b), a statute that exempts certain sales of catered food from the retail sales tax. The appellant health care providers claim that the prepared meals served by nursing homes to certain of their residents fit within the tax exemption. The Department of Revenue (DOR) and the superior court disagreed and denied appellants a refund. We find that the plain meaning of the term "provided," as used in the statute, includes food served to the nursing home residents, thereby exempting the transaction from the sales tax. Accordingly, we reverse and remand.

## FACTS

The facts are undisputed. Saint Joseph and Saint Brendan Nursing Homes (the nursing homes) and the Sacred Heart Medical Center are nonprofit corporations, organized under RCW 24.03. During the relevant tax period, the residents at the nursing homes included senior citizens, low-income individuals, and persons with disabilities.

Over the three-year tax period between January 1986 and December 1989, the nursing homes purchased prepared meals for their residents from Sacred Heart Medical Center. Both nursing homes paid sales tax on these purchases. The residents paid a flat fee for all services provided by the nursing homes, including the prepared meals.

The nursing homes petitioned DOR for a tax refund under RCW 82.08.0293(3)(b). DOR denied their petitions, finding that only nonprofit organizations that provide prepared meals free of charge or for a voluntary donation qualified for the exemption. The nursing homes and the medical center appealed this determination to the Thurston County Superior Court. The superior court affirmed DOR's ruling.

## DISCUSSION

Generally, the sale of food prepared by caterers and restaurants is a taxable event.[1] RCW 82.08.0293(3)(b),[2]

---

[1]This is an exception to the general rule that the sale of "products for human consumption" are tax exempt. RCW 82.08.0293(1).

[2]RCW 82.08.0293 provides in pertinent part:

(1) The [retail sales] tax levied by RCW 82.08.020 shall not apply to sales of food products for human consumption.

. . . .

(2) The exemption of "food products" provided for in subsection (1) of this section shall not apply: (a) When the food products are ordinarily sold for immediate consumption on or near a location at which parking facilities are provided primarily for the use of patrons in consuming the products purchased at the location, even though such products are sold on a "takeout" or "to go" order and are actually packaged or wrapped and taken from the premises of the retailer, or (b) when the food products are sold for consumption within a place, the entrance to which is subject to an admission charge, except for national and state parks and monuments, or (c) to a food product, when sold by the retail vendor, which by law must be handled on the vendor's premises by a person with a food and beverage service worker's permit under RCW 69.06.010 . . .

. . . .

(3) Notwithstanding anything in this section to the contrary, the exemption of "food products" provided in this section shall apply to food products which are furnished, prepared, or served as meals:

(a) Under a state administered nutrition program for the aged as provided for in the Older Americans Act (P.L. 95-478 Title III) and RCW 74.38.040(6); or

(b) Which are ***provided*** to senior citizens, disabled persons, or low-income persons by a not-for-profit organization organized under chapter 24.03 or 24.12 RCW.

(4) Subsection (1) of this section notwithstanding, the retail sale of food products is subject to sales tax under RCW 82.08.020 if the food products are sold through a vending machine, and in this case the selling price for purposes of RCW 82.08.020 is fifty-seven percent of the gross receipts.

(Emphasis added.)

however, creates a limited exemption for food products "furnished, prepared or served as meals" "provided" "by a nonprofit agency" to senior citizens, disabled persons, or low-income persons. The State contends that the term "provided," within the context of this statute, should be narrowly interpreted to include only food donated or offered in exchange for a voluntary donation. Appellants argue that "provided" also includes selling food to the targeted groups.

Subject to certain narrow exemptions, the intent behind RCW 82.08 is to levy a retail sales tax on every retail sale occurring in the state of Washington. RCW 82.08.020(1). A "sale" for purposes of the retail sales tax is "any transfer of the ownership of, title to, or possession of property for a valuable consideration." RCW 82.04.040. This includes "the furnishing of food, drink, or meals for compensation whether consumed upon the premises or not." RCW 82.04.040. A "retail sale" is "every sale of tangible personal property . . . to all persons irrespective of the nature of their business . . . ." RCW 82.04.050(1).

■■ The goal when construing statutory language is to carry out the intent of the Legislature. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). When determining intent, this court must interpret the language at issue in the context of the entire statute. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 778, 903 P.2d 443 (1995). Words that are not statutorily defined must, whenever possible, be given their ordinary and usual meaning. *Palmer v. Department of Revenue*, 82 Wn. App. 367, 372, 917 P.2d 1120 (1996). "Strained, unlikely or unrealistic" statutory interpretations are to be avoided. *Bour v. Johnson*, 122 Wn.2d 829, 835, 864 P.2d 380 (1993).

■■ ■ An ambiguity arises when a term is fairly susceptible to two or more reasonable interpretations. *Schelinski v. Midwest Mut. Ins. Co.*, 71 Wn. App. 783, 787, 863 P.2d 564 (1993). Generally, this court strictly interprets ambiguities in statutes imposing taxes in favor of

the taxpayer. The opposite analysis, however, applies to tax exemption statutes. Thus, a tax exemption statute that creates "doubt or ambiguity" must "be construed strictly, though fairly and in keeping with the ordinary meaning of [its] language, against the taxpayer." *Group Health Coop. of Puget Sound, Inc. v. Washington State Tax Comm'n*, 72 Wn.2d 422, 429, 433 P.2d 201 (1967).

■ When statutory language is ambiguous, this court grants deference to the agency's interpretation, provided the law being interpreted is within the agency's expertise. *Waste Mgt. of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 627-28, 869 P.2d 1034 (1994). The taxpayer bears the burden of establishing an exemption. *Deaconess Med. Ctr. v. Department of Revenue*, 58 Wn. App. 783, 788, 795 P.2d 146 (1990).

DOR regulations recognize that nursing home residents pay a flat rate for a package of services, including meals. Accordingly, it has promulgated WAC 458-20-119(2)(a)(vi), which provides that meals served by hospitals, nursing homes, and other health care institutions as "part of the service rendered in the course of business by such institutions [are] not . . . sale[s] at retail."[3] Consequently, the taxable event at issue is the sale of the prepared meals by the medical center to the nursing homes.

■ The term at issue here is not ambiguous. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1827 (1969) defines "provide": "[T]o supply what is needed for sustenance or support."[4] Undoubtedly, one means of supplying something is to sell it. Although donating and exchanging meals for a voluntary donation are also means of "provid-[ing]" meals, DOR's overly-narrow interpretation conflicts with the statute's plain meaning. " '[A]n administrative

---

[3]Normally, the nursing home would qualify as a wholesaler because it is not the ultimate consumer of the services. *See* RCW 82.04.060 (definition of sale at wholesale).

[4]BLACK'S LAW DICTIONARY at 851 (abridged 6th ed. 1991) provides a similar definition: "**Provide.** To make, procure, or furnish for future use, prepare. To supply; to afford; to contribute."

determination will not be accorded deference if the agency's interpretation conflicts with the relevant statute.' " *Senate Republican Campaign Comm. v. Public Disclosure Comm'n*, 133 Wn.2d 229, 943 P.2d 1358, 1364 (1997) (quoting *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 815, 828 P.2d 549 (1992)).

DOR concedes that "provided," when viewed in isolation, supports appellants' position. It contends, however, that, reading the statute as a whole, the Legislature used "provided" as a means of excluding meals that are sold, but including donated meals. Citing other subsections in which the Legislature describes the sale of prepared foods as a taxable event, DOR argues that the Legislature intentionally used the term "provided" to signal that the exemption did not extend to the sale of meals.

 This argument is not persuasive. When the Legislature created the exemption, it also adopted an identical statute exempting similar transactions from the use tax. RCW 82.12.0293(3)(b).[5] The intent behind the use tax is to tax the privilege of using all tangible property within the state on which sales tax has not been paid, including property acquired as a gift or sold under conditions in which the price does not represent the property's true value. RCW 82.12.010(1). Thus, a reading of the excise tax scheme as a whole shows that the Legislature intended that the term "provided" would exempt all transfers between qualified parties from taxation, regardless of whether the transfer took the form of a sale, a gift or an exchange for a voluntary donation.

---

[5]RCW 82.12.0293(3) provides in pertinent part:

Notwithstanding anything in this section to the contrary, the exemption of "food products" provided in this section shall apply to food products which are furnished, prepared, or served as meals:

. . . .

(b) Which are provided to senior citizens, disabled persons, or low-income persons by a not-for-profit organization organized under chapter 24.03 or 24.12 RCW.

*Compare* RCW 82.08.0293, note 2, *supra.*

Indeed, if the Legislature had intended the exemption to apply only to meals provided for free or for a voluntary contribution, it could have done so by simply exempting them from the use tax. Under DOR's interpretation, the subsection creating a sales tax exemption is merely surplusage. Such an interpretation is contrary to a basic maxim of statutory construction: Whenever possible, a statute must be interpreted so as to give all of its language meaning. *Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 530, 844 P.2d 389 (1993).

 DOR also argues that an all-inclusive construction of "provided" runs counter to the statute's legislative history, which suggests that the bill's sponsor intended the exemption to apply only to nonprofit agencies that donated meals to the elderly and disabled, such as Meals on Wheels. "Where statutory language is plain and unambiguous, [however,] the statute's meaning must be derived from the wording of the statute itself." *Bellevue Fire Fighters Local 1604 v. City of Bellevue*, 100 Wn.2d 748, 750, 675 P.2d 592 (1984). The language at issue here is not ambiguous. Accordingly, its plain meaning controls and resorting to legislative history is not necessary or appropriate.

Finally, DOR claims that the sale of prepared meals is a taxable event because the meals are part of the service the nursing homes provide their patients. Accordingly, DOR argues that the purchase of meals should receive the same tax treatment as the purchase of any other goods necessary for use in providing services.[6]

This argument, however, is not supported by a plain

---

[6]DOR has promulgated a regulation that specifically exempts meals provided by institutions like hospitals from the exemption. WAC 458-20-119 provides:

(3) Retail sales tax. The sales of meals, upon which the retailing tax applies under the provisions set forth above, are generally subject to tax under the retail sales tax classification. However, a retail sales tax exemption is available for the following sales of meals:

. . . .

(b) Prepared meals sold to or for senior citizens, disabled persons, or low-income persons by a not-for-profit organization organized under chapter 24.03 or 24.12 RCW. *However, this exemption does not apply to purchases of pre-*

reading of the exemption statute. Although the statutory language requires the ultimate recipients of the prepared meals to be members of a particular class, nothing in the statute supports DOR's contention that meals are to be treated the same as other nursing home services. Indeed, the statute's drafters used the passive tense when describing the exempt transactions, suggesting that any retail sale of a prepared meal furnished for and served to the specified class qualifies for the exemption.

We reverse and remand.

ARMSTRONG and HUNT, JJ., concur.

*pared meals by not-for-profit organizations, such as hospitals, which provide the meals to patients as a part of the services they render.*

(Emphasis added.)