IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MORPHO DETECTION, INC., | ) | No. 79066-8-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Respondent. | ) | FILED: April 29, 2019 |
| | ) | |

ANDRUS, J. — Morpho Detection, Inc. (MDI) seeks reversal of summary judgment in which the trial court held, based on this court's ruling in Morpho Detection, Inc. v. Department of Revenue, 194 Wn. App. 17, 371 P.3d 101, review denied, 186 Wn.2d 1010, 380 P.3d 502 (2016), that MDI is liable for use tax under RCW 82.04.190(6). Because this court's published decision clearly erred in reaching a factual issue not briefed to the court, we conclude our prior decision should be modified to narrow its holding to the issue properly presented to it. We thus reverse summary judgment.

## FACTS

The Washington State Department of Revenue (DOR) assessed use tax on MDI's sale of explosive detection machines (EDMs) to the United States Transportation Security Administration (TSA) that were deployed in the Seattle-

Tacoma (Sea-Tac) and Spokane airports. MDI paid the assessment and sought a $5.3 million refund under RCW 82.32.180, claiming it was not a "consumer" subject to the use tax under RCW 82.12.020(1)(a).[1] The term "consumer" is defined in relevant part in RCW 82.04.190(6):

> Any person engaged in the business of constructing, repairing, decorating, or improving new or existing buildings or other structures under, upon, or above real property of or for the United States, any instrumentality thereof, . . . including the installing or attaching of any article of tangible personal property therein or thereto, whether or not such personal property becomes a part of the realty by virtue of installation . . . .

MDI alleged two separate legal bases for its refund request. First, it alleged the airports in which its EDMs were used were not the "real property of or for the United States." Second, MDI claimed it did not construct, repair, decorate, or improve any new or existing buildings or structures, and did not incorporate, install, or attach the EDMs to any building or structure in Washington.

MDI's 2014 Summary Judgment Motion

In June 2014, MDI filed a motion for summary judgment. MDI first argued it was not engaged in the business of "constructing, repairing, decorating, or improving new or existing buildings or other structures." It anticipated DOR would argue that MDI installed the EDMs at the airports and that this installation work made MDI a company in the business of "constructing, repairing, decorating or improving any building."

---

[1] Under this statutory provision, the State imposes a use tax on "every person in this state . . . for the privilege of using within this state as a consumer any . . . [a]rticle of tangible personal property acquired by the user in any manner." RCW 82.12.020(1)(a).

MDI indicated in footnotes to its summary judgment motion that the parties disputed the meaning of the word "installing" as used in RCW 82.04.190(6) and "whether MDI's activities amount to 'installing.'" But it recognized that "[f]or purposes of this motion, all disputed facts must be assumed in [DOR's] favor." It informed the trial court that, for purposes of its motion, the court must assume MDI installed the EDMs at the airports even though MDI and DOR disputed this fact. But it argued "the mere installation of EDMs alone does not make MDI a person in the business of constructing, repairing, decorating or improving any building," even if the EDMs "improved" the airport buildings where they were deployed.

In support of its motion, MDI presented evidence that its EDMs were manufactured and sold to TSA in California and shipped to TSA in Texas. TSA then deployed some of the equipment to airports in states other than Washington before TSA brought 41 EDMs to the Sea-Tac airport and another 5 to the Spokane airport. Because each EDM is large and needs to be partially disassembled before shipment, MDI agreed to reassemble each machine at any airport in the United States at which TSA deployed them and to assist with testing after reassembly to certify the machines were operational. MDI also provided evidence that when TSA chose to purchase rigging services from MDI, MDI subcontracted that work to unaffiliated third parties. These third parties, and not MDI, anchored the machines to the buildings in which they were installed. MDI's Contracts Administrator testified that in the sales contracts for the EDMs deployed in Washington, "the only activities MDI performed in Washington involved assembly, disassembly, moving, uncrating, crating, and testing of machines." Additionally,

6. MDI did not install any EDMs in Washington as the term is typically understood.

7. MDI is not in the business of constructing, repairing, decorating, or improving new or existing buildings or other structures as those terms are normally understood. Moreover, MDI did not construct, decorate, repair or improve any building in Washington during the audit period.

8. MDI is in the business of manufacturing, marketing and supporting the EDM[s] it sells. All of MDI's work in Washington is consistent with this business.

As MDI anticipated, DOR argued MDI was in the business of improving buildings. It presented evidence MDI earned millions of dollars for work at airports after selling the EDMs. It submitted copies of MDI prospectus filings, work proposals, delivery orders, installation checklists, and invoices, all of which it contended evidenced MDI's provision of a significant amount of installation services. It argued "even if the court were to agree with [MDI] that a company must engage in some threshold amount of improvement activity to trigger the use tax, a question of fact would exist as to whether [MDI] meets that threshold."

MDI's second argument on summary judgment was that RCW 82.04.190(6) only applies if the construction work occurs on property belonging to the United States government. It presented evidence from the General Counsel to the Spokane Airport and a Project Manager for the Port of Seattle who both testified that the United States government had no property interest in the airports. But DOR argued the tax statute applied to any work on real property when that work is done for the United States, regardless of whether the real property on which the work is performed belongs to the United States government. Because the federal government paid for MDI's work, DOR argued, the work was "for" the United States within the meaning of RCW 82.04.190(6). DOR asked the trial court to deny MDI's

motion and "grant partial summary judgment to [DOR], as the nonmoving party, on the legal issues that [MDI] raises."

The trial court granted summary judgment to MDI on this second issue only. It ruled:

1. Regarding the issue of whether [MDI] was "engaged in the business of constructing, decorating, or improving new or existing buildings or other structures," a genuine issue of material fact exists that precludes summary judgment.
2. Regarding the issue of whether any such work occurred "under, upon, or above real property of or for the United States," no genuine issue of material fact exists and [MDI] is entitled to judgment as a matter of law.

It denied DOR's request for partial summary judgment.

<u>DOR's Appeal</u>

DOR appealed to this court. It assigned error to the granting of MDI's motion for summary judgment, the denial of its request for partial summary judgment, and the trial court's legal ruling that for the use tax to apply under RCW 82.04.190(6), the United States must have a beneficial interest in the real property on which buildings are improved. The sole issue, as defined by DOR, was "[d]id the trial court err when it ruled that [MDI] improved buildings neither 'of' nor 'for' the United States under RCW 82.04.190(6) and thus did not owe use tax on the value of the personal property it installed?"

In both DOR's and MDI's briefing, the parties informed this court that MDI had conceded solely for purposes of summary judgment that it installed EDMs at Sea-Tac and the Spokane airports. The focus of the briefing was whether RCW 82.04.190(6) applied to construction activities only on federal government property or whether the statute also applied to construction activities undertaken for the

federal government on property belonging to others. Neither party briefed nor argued whether a genuine issue of material fact existed as to whether MDI was "engaged in the business of constructing, decorating, or improving new or existing buildings or other structures."

Court of Appeals Decision

On March 28, 2016, this court issued its decision, reversing the trial court and holding that MDI was a "consumer" subject to the use tax. Morpho, 194 Wn. App. at 19. The court described the issue on appeal as follows:

> [MDI] moved for summary judgment on the issue of whether it fell under the definition of a "consumer" in RCW 82.04.190(6) and was therefore subject to the use tax. DOR cross moved for partial summary judgment on the same issues. The trial court agreed with [MDI] that the term "of or for" as used in RCW 82.04.190(6) modifies the term "real property." Thus, in order to meet the statutory definition of a "consumer," the work done by [MDI] had to have been done on either real property "of the United States," i.e., owned by the United States, or real property "for the United States," i.e., property in which the United States held a lesser property interest, such as "a lease, a license, an easement or something of that issue." Because it was undisputed that the United States neither owned nor held a lesser property interest in Sea-Tac or the Spokane airport, the trial court ruled that [MDI] was not a consumer and not subject to the use tax. DOR appeals the trial court's order granting summary judgment in [MDI's] favor and the denial of its motion for partial summary judgment.

Id. at 21 (citations omitted). In its analysis, the court stated "[MDI] conceded at trial that it installed the detection systems in Washington." Id. at 23. It then defined the sole point of contention on appeal—"the plain meaning of the phrase 'for the United States' as it is used in the statutory definition of 'consumer.'" Id. The court rejected MDI's interpretation of this language and concluded that "the use tax applies to a contractor who installs tangible property on real property either owned by the federal government or for the federal government." Id. at 28. In the latter

- 6 -

circumstance, we held, "it is irrelevant whether the United States also has some interest in the real property on which the work is done." Id. We then stated:

> Here, because it is undisputed that [MDI] installed security systems for the United States at Sea-Tac and the Spokane airport, it is a consumer, as a matter of law, under RCW 82.04.190(6). Accordingly, we reverse and remand for entry of an order granting partial summary judgment in favor of DOR.

Id. MDI did not move for reconsideration of this court's factual statement that "it is undisputed that [MDI] installed security systems" in the airports.

### MDI's Petition for Discretionary Review

MDI sought discretionary review of this court's decision with the Washington Supreme Court. In its petition for review, MDI summarized DOR's position— "[DOR] alleges that [MDI] installed the machines at the airports and thereby improved the airport buildings." In a footnote, MDI stated it "disputes that it performed such installation and/or that such installation improved any building. For purposes of its motion for summary judgment, such allegations were assumed true." DOR's answer to the petition did not take issue with this characterization of its position or argue the concession had been waived by MDI's failure to seek reconsideration of this court's decision.

The Supreme Court denied review on September 28, 2016, 186 Wn.2d 1010, 380 P.3d 502, and the mandate issued on October 27, 2016.

### DOR's 2017 Summary Judgment Motion

In August 2017, DOR filed a summary judgment motion seeking dismissal of MDI's claims. DOR argued this court's decision, holding that MDI is a "consumer" subject to the use tax, was law of the case and required dismissal of any claim for a tax refund. It contended the "broad holding of the Court of Appeals

- 7 -

resolved [MDI's] statutory claims." In opposing the motion, MDI argued it "has always contended its work was not installation." MDI submitted the declaration of a construction superintendent who worked at Sea-Tac when the EDMs were placed into service. He testified MDI did not install any of the EDMs at Sea-Tac; instead, the TSA hired third-party contractors to do this work. In addition, a Project Manager for MDI similarly testified that it supplied and assembled the machines but did not install the machines into any building or structure. According to him, all rigging, anchoring, electrical wiring, and plumbing was performed by TSA contractors, not MDI. DOR, in its reply briefing, indicated the factual evidence was irrelevant because the Court of Appeals' decision that MDI was a consumer was the unambiguous law of the case.

At oral argument on this motion, the trial court noted that the

> Court of Appeals decision . . . explicitly says something, finding as a matter of law that [MDI] is a consumer apparently based on a misunderstanding of what happened below because there was a concession for the purposes of summary judgment. The Court of Appeals has this statement that they have conceded this when it really wasn't a true concession.

DOR conceded that the trial court's explanation of what occurred was "the most likely interpretation of the facts." DOR argued there was a possibility the Court of Appeals, in conducting its de novo review of the record, decided to reach the issue not briefed by the parties—namely whether MDI installed the EDMs and whether that installation work sufficed to make MDI a person in the business of improving real property. The trial court was skeptical, noting "they would have done that silently then because they certainly didn't say they were doing that." DOR agreed that while possible, it was unlikely this court chose this path.

The trial court ruled it was bound by this court's decision under law of the case. It stated:

> With respect to the statutory claims, the Court of Appeals has explicitly stated that [MDI] is a consumer as a matter of law. While it is quite possible that the Court of Appeals made that statement based on an erroneous understanding of a concession that was not perhaps done in the spirit that was intended or construed by the Court of Appeals, there is in multiple places in the Court of Appeals opinion in this case the statement that [MDI] is a consumer as a matter of law. The appropriate way to address that would have been through a motion for reconsideration with the Court of Appeals.
>
> Additionally, the importance behind that is the fact that there is an alternative explanation, which I cannot say with certainty is not the case, which is the one that I just identified, in that on summary judgment on the proper circumstances, judgment can be entered in favor of the non-moving party. The record could have been sufficiently developed from the perspective of the Court of Appeals to do that in this case.

The trial court granted DOR's motion for summary judgment and dismissed MDI's claims, both statutory and constitutional. MDI appeals.

## ANALYSIS

MDI raises two issues on appeal. First, MDI argues the trial court misinterpreted this court's decision in granting summary judgment on the "consumer" issue to DOR. Second, MDI asks this court to overrule the prior decision to the extent it reached and resolved an issue of disputed fact without briefing by the parties.

We agree with the trial court and DOR that this court's decision is unambiguous and clearly decided that MDI was a "consumer" under RCW 82.04.190(6). We therefore reject MDI's first argument.

We agree with MDI, however, that the Court of Appeals' decision was based on the erroneous assumption that MDI had conceded that it had in fact installed

- 9 -

the EDMs at Sea-Tac and the Spokane airport. We conclude this error requires us to narrow the holding of our prior decision and to acknowledge, as DOR did in its briefing and at oral argument, that genuine issues of fact exist as to whether MDI engaged in the business of improving real property by installing EDMs at the airports.

The law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation. Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005). RAP 2.5(c) codifies this important doctrine. But there is an exception to the rule:

> (c) Law of the Case Doctrine Restricted. The following provisions apply if the same case is again before the appellate court following a remand:
>
> . . . .
>
> (2) Prior Appellate Court Decision. The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

RAP 2.5(c)(2).

As our Supreme Court noted in Roberson, an appellate court is not obligated to perpetuate its own error. 156 Wn.2d at 42. Roberson sets out the test for deviating from the law of the case doctrine—whether the prior decision was clearly erroneous and, if so, whether the erroneous decision works a manifest injustice to one party. Id.

We conclude MDI has demonstrated clear error. This court's broad holding was based on the admittedly erroneous assumption that MDI had conceded it

installed the EDM equipment at Sea-Tac and the Spokane airport. Yet, there was evidence in the record that MDI had played no role in the physical installation process and that a contractor other than MDI hoisted the machines, turned the wrenches, wired the machinery, and plumbed their piping. The trial court ruled there were genuine issues of fact on the issue of whether MDI constructed or improved real property. And DOR concedes there was conflicting evidence before the trial court on that issue.

The more difficult question is whether perpetuating the error causes MDI to suffer a manifest injustice. The parties agree MDI did not seek reconsideration from this court or raise the error in its petition for review. DOR argues by failing to do so, MDI waived its right to seek a Roberson manifest injustice determination. We cannot agree.

In Greene v. Rothschild, 68 Wn.2d 1, 414 P.2d 1013 (1966), the Supreme Court stated that the plaintiff had not waived the right to seek a correction of an earlier decision, id. at 10. This opinion suggests that a party's failure to identify an error in an appellate decision could, under some set of circumstances, constitute a waiver of that claimed error. But we find no Washington authority for the proposition that a party waives the right to claim clear error and manifest injustice under RAP 2.5(c)(2) simply by failing to file a motion for reconsideration. While MDI should have sought reconsideration with this court to correct the error before the mandate issued, we find no basis to conclude its failure to do so was a strategic choice to waive disputed factual issues, particularly when neither party thought the factual dispute was before the court in the initial appeal.

Every single brief MDI submitted to this court and to the Supreme Court indicated MDI disputed DOR's factual contentions that MDI was in the business of improving real property and that MDI installed the machines at Washington airports. MDI consistently noted it merely conceded these facts on summary judgment for the purpose of obtaining a legal ruling on the meaning of the phrase "of or for the United States" within RCW 82.04.190(6).

Moreover, we see no corresponding injustice to DOR if we set aside the erroneous portion of our prior decision. See Greene, 68 Wn.2d at 10 (reasoning that prior holding should be overruled "if to apply the [law of the case] doctrine would work a manifest injustice to one party, whereas no corresponding injustice would result to the other party if the erroneous decision should be set aside"). DOR recognized, in the initial appeal and before the trial court on remand, that MDI disputed DOR's contention that MDI performed installation work in Washington. In its opening brief to this court, DOR summarized an administrative appeals decision adverse to MDI, and noted:

> Most of the [Final Executive Level] Determination is devoted to the issue of whether [MDI] in fact "installed" the systems.
>
> This is likely the primary issue that will be litigated if the case is remanded. Despite contracts, statements of work, invoices, and testimony by [MDI] employees stating that it installed the systems, [MDI] makes the surprising contention that its work was not "installation" and therefore, that it is not a "consumer" under RCW 82.04.190(6). However, for purposes of summary judgment, [MDI] has conceded that it installed the systems and the issue is therefore not presently in dispute.

(citations omitted). DOR was ready to try these factual disputes before and remains in the same legal position today as it was in when the court issued its first decision. Additionally, the State of Washington has retained the benefit of the

taxes MDI paid and, thus, has experienced no monetary loss as a result of the delay in correcting the court's error. We conclude not correcting the error in the court's earlier decision, under the unique circumstances of this case, will lead to a manifest injustice.

For this reason, we affirm that portion of the court's decision that held MDI is not exempt from use tax under RCW 82.04.190(6) merely because the property on which its EDMs were installed is not real property owned by the federal government. We modify the decision to reserve on the ultimate issue of whether MDI is a "consumer" because there remain genuine issues of material fact as to whether MDI is engaged in the business of improving new or existing buildings or structures and whether it installed the EDMs in any new or existing buildings or structures. We reverse the summary judgment of MDI's statutory claims and remand the case for proceedings consistent with this opinion.

REVERSED.

_Andrus, J._

WE CONCUR:

_Chun, J._

_Leach, J._